# In the United States District Court for the Southern District of Georgia Waycross Division

GARRY HALL,

    Plaintiff,

v.

CITY OF WILLACOOCHEE, et al.,

    Defendants.

5:21-CV-20

## ORDER

This matter is before the Court on Defendants' motion for judgment on the pleadings. Dkt. No. 18. For the reasons given below, the motion is **GRANTED**.

## BACKGROUND

This case is a property dispute turned civil rights action. The controversy began when Plaintiff Garry Hall contracted to have a fence installed on (what he alleges is) his property. Dkt. No. 1 ¶¶ 17-18; see also id. ¶ 20 (describing the location of the property). The pleadings do not shed much light on why, but it seems clear that at least some of the parties disagreed about the status and ownership of the land. See id. ¶¶ 27-28, 32. Perhaps for that reason, Plaintiff informed the Willacoochee Police of his plans to build a fence on the disputed property. Id. ¶ 29.

During construction of the fence, Plaintiff alleges, Defendants Marty Moore, Anthony Davis, and Timothy Davis "consistently cursed, harassed[,] and threatened the installers of the fence" and "harassed and threatened the Plaintiff and his grandchildren." Id. ¶¶ 27-28. As a result, Plaintiff apparently summoned the Police to his property "[o]n several occasions." Id. ¶ 30.

On one such occasion, Plaintiff called the police "to quell disturbances by Defendants Moore and Davis," and one of the Defendant officers, Kevin Rodriguez, came to the scene. Id. ¶ 30-31. Once there, Rodriguez told Plaintiff that the Davises had a legal right to remove the fence. Id. ¶¶ 31-32. Plaintiff alleges that the Police Department knew, or should have known, that he owned the property where the fence was built—but allowed the Davises to remove it anyway. Id. ¶¶ 33-35. That led to this lawsuit.

Plaintiff filed this lawsuit, seemingly alleging (1) a trespass claim, id ¶ 1, (2) a takings claim, id., (3) a negligent hiring and training claim, id. ¶¶ 37-42, (4) intentional infliction of emotional distress, id. ¶¶ 43-44, and (5) a conspiracy "to deprive the Plaintiff [of] the use and enjoyment of his property," id. ¶¶ 45-50. Plaintiff sued numerous defendants, including:

2

- the City of Willacoochee;
- the City Council of Willacoochee;
- Willacoochee Mayor Samuel Newsom;
- the Mayor Pro Temp;
- Councilmembers Malcom Jones, Verniel Hall, George Myers, and Calesha Lott;
- the Willacoochee Police Department,
- Willacoochee Police Chief William Gilliard;
- Officer Kevin Rodriguez;
- an undescribed "public works" employee named Marty Moore; and
- two private citizens: Anthony Davis and Timothy Davis.

See generally id. Outside of the officer defendants, Plaintiff does not specify what role the other individually-named Defendants played in the alleged wrongs.

The movant-defendants answered, dkt. nos. 5, 10, 12, 16, and asked for judgment on the pleadings, dkt. no. 18. The only defendants not party to the motion are Anthony and Timothy Davis. Id. at 1 n.1.[1] The motion advances some seven arguments. As to Plaintiff's federal law claims, Defendants contend that:

---

[1] To this point, the Davises have not answered or even entered an appearance.

3

1. Hall has not alleged any violation of his federal rights, dkt. no. 18 at 5-13;
2. Even if he had, he has not alleged that any violation was caused by a municipal policy, practice, or custom, so the claims against the City (including official capacity claims) must fail, id. at 13-15; and
3. To the extent Hall is asserting any individual capacity claims, they are barred by qualified immunity, id. at 15-17;

And as to Plaintiff's state law claims, Defendants argue that:

4. Sovereign Immunity bars any state-law claims against the City, id. at 17-19;
5. Hall has not complied with Georgia's ante litem notice requirements, id. at 19-20;
6. Official Immunity bars any individual capacity claims, id. at 20-22; and
7. Hall has not alleged facts showing intentional infliction of emotional distress, id. at 22-23.

Plaintiff, of course, disagrees, insisting that his complaint shows violations of "the Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 . . . as a result of Defendants['] destruction of [his] property." See generally Dkt. No. 19 at 1.

4

**LEGAL STANDARD**

"[U]nder Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed—but early enough not to delay trial." Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1350 (11th Cir. 2018) (quotation omitted). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)," id., meaning it is "appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law," Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted). To avoid dismissal on these grounds, "[the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To that end, "conclusory allegations [ ] are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." Randall v. Scott, 610 F.3d 701, 709-710 (11th Cir. 2010). And, ultimately, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citation omitted).

## DISCUSSION

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute[.]" Durrence v. City of Brunswick, No. 2:15-cv-137, 2015 WL 6692262, at *2 (S.D. Ga. Nov. 3, 2015) (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)) (internal quotation marks omitted). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—[that is,] civil actions that arise under the Constitution, laws, or treaties of the United States." Id. (quoting Exxon Mobil, 545 U.S. at 552).

Plaintiff invokes federal jurisdiction under 42 U.S.C. § 1983, but that does not take him very far here. Section 1983 "does not itself create any substantive legal rights," it merely "provides 'a method for vindicating federal rights elsewhere conferred.'" Mundy v. Hambright, No. 2:13-cv-128, 2014 WL 2895475, at *2 (S.D. Ga. June 24, 2014) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)). "To sustain a claim under § 1983, the plaintiff must establish that he was 'deprived of a right secured by the Constitution or laws of the United States[.]" Id. (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)); cf. Brewer v. Smith, No. 6:04-cv-158, 2006 WL 2507561, at *2 (S.D.

Ga. Aug. 28, 2006) (because "[s]ection 1983 is not a source of rights, but a means of vindicating federal rights," courts "must 'first identify the specific [federal] right allegedly infringed'" (quoting Albright v. Oliver, 510 U.S. 266, 271 (1994))); Bettis v. Holmes, No. 4:04-cv-217, 2007 WL 1521591, at *2 (S.D. Ga. May 23, 2007) ("Violations of state statutes or tortious conduct under state law do not constitute the type of injury for which § 1983 provides a remedy."). The problem here is that "[t]his Court is unaware of any constitutional provision or federal law that would provide the basis for Plaintiff's Complaint," and "Plaintiff's pleadings [and briefs] do not shed any light on [the] matter." Durrence, 2015 WL 6692262, at *2.

**1.** The first few paragraphs of the complaint reference a number of federal authorities, but none of those reveal a basis for federal jurisdiction here. Dkt. No. 1 ¶¶ 1-3. First, invoking 28 U.S.C. § 1331 proves nothing—that statute just confirms that district courts have jurisdiction over cases arising under "the Constitution, laws, or treaties of the United States." The existence of such a law is exactly what Plaintiff must show here. Dkt. No. 1 ¶ 3. Next, the citation to Title VII—an employment discrimination law—is also no help: this is clearly not an employment case. See id. ¶ 2 (citing 42 U.S.C. § 2000e-1 et seq.). Along the same lines, 42 U.S.C. § 1981 does not provide a

7

jurisdictional anchor, because nothing in the complaint indicates that Plaintiff has been denied "the same right . . . to make and enforce contracts, to sue," and otherwise claim "the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." See Dkt. No. 1 ¶ 3 (citing 42 U.S.C. § 1981).

Moving to the body of the complaint, there are references to federal (or potentially federal) causes of action but no discernable federal claims based on the facts actually alleged. Despite repeated references to the Fourteenth Amendment, for example, the complaint nowhere links any of the alleged wrongs to the rights guaranteed by that Amendment. Compare id. ¶¶ 1-2 with id. ¶¶ 3-50. Similarly, Hall's references to "conspir[acy]," id. ¶¶ 46, 50, might help to anchor jurisdiction in *some* case, see 42 U.S.C. § 1985, but the complaint here points only to a plot "to deprive [him] [of] the use and enjoyment of his property"—not his federal due process rights, themselves. Dkt. No. 1 ¶ 46; see also Gibbons v. McBride, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. Aug. 21, 2015) (explaining that plaintiffs must allege "an agreement among the Defendants to violate" his "federal rights"); Carey v. Piphus, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the [underlying] deprivation [of protected rights], but from the mistaken or unjustified deprivation of life, liberty, or property" because of

8

constitutionally inadequate process). Still other references are meritless on their face, like paragraph 40's invocation of (1) the Eleventh Amendment, which codifies state sovereign immunity, U.S. Const. Amend. XI; and (2) the Fifth Amendment's due process clause, which "governs the conduct of federal actors, not state actors," Collins v. Bates, No. 17-14559-G, 2018 WL 5090845, at *8 (11th Cir. May 10, 2018). See Dkt. No. 1 ¶ 40; see also Dkt. No. 19 at 5-6 (discussing these same claims).[2]

The complaint, in short, does not show any federal rights that can be asserted via a § 1983 claim.

**2.** Nor does Plaintiff's briefing make a more persuasive showing. For the most part, Plaintiff merely repeats the vague wrongs alleged in his complaint, contending that Defendants "conspired against [him]" to deprive him of the use of his property, dkt. no. 19 at 8-9, that Rodriguez "failed to deescalate the situation and [ ] granted permission to [the Davises] to illegally obstruct Plaintiff's use and enjoyment of his property," id. at 13, and things of that nature. The only elaboration Plaintiff offers on what federal rights were violated here is (1)

---

[2] The expressly named causes of action—(1) negligent hiring and training and (2) intentional infliction of emotional distress—are both state law claims. Compare dkt. no. 1 ¶¶ 37-44 with id. ¶ 1 ("[This] action also seeks redress under state law for trespassing, taking of property, negligent training and intentional infliction of emotional distress.").

9

to suggest that allowing the Davises to tear down the fence was a "taking"[3] and (2) to insist that the due process clause guaranteed him some sort of "post-deprivation remed[y]." Id. at 6-8. Neither of those arguments has merit here.

First, "[t]here clearly can be no taking when whatever acts complained of are those of private parties, not the Government." Alves v. United States, 133 F.3d 1454, 1457-58 (Fed. Cir. 1998) (citation omitted); cf. Hall v. United States, 84 Fed. Cl. 463, 472 (2008). It changes nothing that (some) Defendants here "allow[ed] private individuals to destroy [Hall's] property," or even "refus[ed] . . . to halt any destruction of [his] property" through some negligence or lack of diligence, dkt. no. 19 at 5, because "[a] necessary component of any takings claim is that *the Government* actually *took* property"; the mere "failure to prevent" others, "acting in their private capacity," from doing so, is "properly [ ] characterized as *inaction*," so it "cannot constitute

---

[3] See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980) (noting that the Fifth Amendment's takings clause "applies against the States through the Fourteenth Amendment"); Knick v. Township of Scott, Pa., 139 S. Ct. 2162, 2172 (2019) (holding that "[j]ust as someone whose property has been taken by the Federal Government has a claim 'founded upon the constitution' . . . someone whose property has been taken by a local government has a claim under § 1983 for a 'deprivation of a right secured by the Constitution' that he may bring . . . in federal court" (citation omitted) (alterations accepted)).

a taking." Griffin Broadband Commc'ns, Inc. v. United States, 79 Fed. Cl. 320, 324 (2007) (emphasis added).[4]

And second, Plaintiff's insistence on a post-deprivation remedy proves too much. A federal due process claim requires, among other things, a showing that the procedure(s) to prevent deprivation of protected property rights were constitutionally inadequate. Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994); cf. Reams v. Irvin, 561 F.3d 1258, 1266 (11th Cir. 2009) ("It is well-settled

---

[4] For similar reasons, there is no merit to the assertion that Rodriguez's involvement transformed the Davises actions into state action. Unlike cases in which police take an active role in property disputes, see Greco v. Guss, 775 F.2d 161, 168 (7th Cir. 1985), Plaintiff merely alleges that the police "permitted" the Davises to remove his fence, despite knowing he had the right to have it there, dkt. no. 1 ¶¶ 33-36. So by the complaint's own terms, Plaintiff does not actually allege facts showing "official participation in a repossession or a seizure." Marcus v. McCollum, 394 F.3d 813, 824 (10th Cir. 2004); United States v. Coleman, 628 F.2d 961, 964 & n.1 (6th Cir. 1980) ("The police neither encouraged nor directed Clarke to repossess the truck in a particular manner. Their presence at the scene was not an indispensable prerequisite for repossession of the truck."). And unlike cases in which the police are called-by and arrive-with the repossessor of property, e.g. Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985), Plaintiff alleges that *he himself* called the police and *asked them* to intervene. Dkt. No. 1 ¶¶ 30-31. They simply declined. Id. ¶¶ 32-36. So there is no serious argument that the fence would not have been torn down "but for" Rodriguez's help. Marcus, 394 F.3d at 819.

11

that a constitutional violation is actionable under § 1983 only when the state refuses to provide a process sufficient to remedy the procedural deprivation" (internal quotation marks and citations omitted)). This rule "looks to . . . whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the . . . plaintiff claims to have suffered." Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty., 202 F.3d 1297, 1300 (11th Cir. 2000). The remedy need not "provide all relief under section 1983" to be adequate, so long as it "could have fully compensated the [plaintiff] . . . for the loss suffered." McKinney, 20 F.3d at 1564 (quoting Paratt v. Taylor, 451 U.S. 527, 544 (1981)). If so, "then there is no federal procedural due process violation *regardless* of whether the plaintiff has taken advantage of the state remedy or attempted to do so." Horton, 202 F.3d at 1300 (emphasis added).

Plaintiff does not allege or argue that he has no adequate remedy under state law—and, indeed, he has one. First and foremost, Plaintiff could sue the Davis Defendants for trespass regarding their alleged intrusions-onto and destruction-of his property. Lanier v. Burnette, 538 S.E.2d 476, 480 (Ga. Ct. App. 2000). And to the extent Plaintiff had or has issues with anyone honoring his property line, he can file an action to quiet title. See O.C.G.A § 23-3-60. Plaintiff never explains why those are not

12

constitutionally adequate remedies for the alleged deprivation of his property, so he has not shown any due process problem here. Trolley Boats, LLC v. City of Holly Hill, Fla., No. 6:07-cv-1027, 2009 WL 890386, at *8 (M.D. Fla. Mar. 31, 2009) ("Plaintiffs' failure to allege that they lacked post deprivation remedies" in a "claim related to a police officer's intervention in a property dispute" effectively "preclude[d] a procedural due process claim[.]"); see also New Covenant Church, Inc. v. Futch, 2:19-cv-40, 2021 WL 412274, at *8 (S.D. Ga. Feb. 5, 2021) ("Plaintiffs 'have not challenged the adequacy of Georgia's post-deprivation remedies,' so the Court 'has no occasion to decide whether Georgia law does in fact provide adequate avenues for making the Plaintiffs whole") (alterations accepted) (quoting Tinney, 77 F.3d at 383)).

Thus, even considering the arguments in Plaintiff's brief, the complaint alleges no cognizable federal claims.[5]

---

[5] Because the Court reaches this conclusion, Plaintiff's federal claims fail across the board, and there is no need to address Defendants' *other* arguments regarding subsets of the federal claims here, namely: (1) whether Plaintiff has plausibly alleged that any violation here was caused by a municipal policy, practice, or custom, dkt. no. 18 at 13-15; and (2) whether any individual capacity claims (though there do not appear to be any, the complaint names all the individual defendants in their official capacities) are barred by qualified immunity, see id. at 15-17.

**CONCLUSION**

For these reasons, Defendants' motion for judgment on the pleadings, dkt. no. 18, is **GRANTED** as to Plaintiff's federal law claims.

Given that conclusion, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (including as to Defendants Anthony and Timothy Davis). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004)); see also Whitaker v. Bd. of Regents of the Univ. Sys. of Ga., No. 118-141, 2020 WL 4939118, at *8 (S.D. Ga. Aug. 24, 2020) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court concludes, as it has in the past, that the proper course is to **DISMISS** these state law claims without prejudice. See, e.g., Gray, 181 F. Supp. 3d at 1255. Since the only claims alleged against the Davises are state law claims, this order disposes of all the remaining claims here.

The Clerk is therefore directed to **CLOSE** this case.

**SO ORDERED** this 7th day of March, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA